George ZILICH, Plaintiff–Appellee,

v.

Thomas LONGO; David Mack; Nancy Marincic; Rose Marie Lovano; Joseph Suster; Michael Abella; And Wilhelm Spiegelberg, Defendants–Appellants.

No. 93–3511.

United States Court of Appeals, Sixth Circuit.

Argued April 25, 1994.

Decided Sept. 1, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 3, 1994.

J. Michael Murray, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, Patrick M. Flanagan, Savoy, Bilancini, Flana-gan & Kenneally (argued and briefed), Elyria, OH, for George Zilich.

Frederick W. Whatley (argued), R. Todd Hunt, Walter, Haverfield, Buescher & Chockley, Cleveland, OH, for City of Garfield Hts, et al.

Marcia E. Hurt, Walter, Haverfield, Buescher & Chockley (briefed), Alan E. Johnson, Leo R. Ward, Smith R. Brittingham, IV (briefed), Ward & Associates, Cleveland, OH, for Thomas J. Longo, David E. Mack, Nancy J. Marincic, Rose Marie Lovano, Joseph Suster, Michael Abella and Wilhelm G. Spiegelberg.

Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.

MERRITT, Chief Judge.

The defendants, the mayor of a small Ohio town and other local officials, passed a city council resolution denouncing plaintiff, a former city council member, allegedly in retaliation for his political opposition to the mayor. The plaintiff also alleges threats of physical harm by defendants. Plaintiff filed suit under 42 U.S.C. § 1983 making numerous claims, three of which—a bill of attainder claim and two types of First Amendment claims—are the subject of this interlocutory appeal. The district court denied defendants' summary judgment motion based on qualified immunity from liability on the claims. It held that there was a material dispute of fact on these three issues. To determine whether defendants are entitled to qualified immunity, we must decide as a preliminary matter if the resolution and ordinance in question could constitute (1) a bill of attainder or (2) a violation of plaintiff's First Amendment rights and (3) whether alleged threats of physical violence against plaintiff in retaliation for his political criticism could constitute a violation of his right of free speech by defendants under color of law.

I. Facts

The plaintiff, George Zilich, was formerly a member of the city council in Garfield Heights, Ohio. The defendants in this appeal are Thomas Longo, the mayor of Garfield Heights; David Mack and Wilhelm

Spiegelberg, the law director and assistant law director; and Nancy Marincic, Rose Marie Lovano, Michael Abella and Joseph Suster, members of the city council who voted for the resolution and ordinance challenged by plaintiff.

After Zilich's election in 1989, the defeated incumbent claimed that Zilich failed to meet the city's three-year residency requirement to be a member of the council and filed suit to enjoin Zilich from taking office. The state court refused to enter an injunction on various grounds, one of which was that the city council is the sole judge of the qualifications of its own members. After taking office, several individuals attempted to challenge Zilich's qualifications before the council but the council refused to disqualify him.[1]

During his two-year term, Zilich was a thorn in the side of the mayor and his administration. He challenged the city's fiscal policies, its contract bidding procedures and the actions of the police and law departments, among other issues.

For purposes of this appeal, we assume the existence of the following facts:

During this same period, Zilich's home was vandalized, his tires were slashed, his car windows were shot out and he and his wife received anonymous phone calls threatening bodily harm. For example, just before a meeting on the mayor's budget proposal, an anonymous caller threatened "see you tonight asshole, you're a dead man." Around this same time, Thomas Furth, an assistant law director for the city, told Zilich about the mayor's increasing hostility toward him. In addition, a policeman investigating the shooting of Zilich's car told him that "these type things would stop if he would merely stop his criticisms and allegations against the mayor and the law department."

Furth actually attended meetings in which the mayor and others discussed silencing Zilich and provided detailed testimony about the serious nature of these threats. According to Furth, the mayor and his staff discussed slapping Zilich around, shooting him, hiring someone to break his legs, "cutting him" because he was a "bleeder" and tearing his throat out. These threats also involved terrorizing Zilich's family, and one specific plan included sexually assaulting Mrs. Zilich. The defendants maintain that all of these threats were "jokes," but Furth testified that none were made in a joking manner.

In 1991 Zilich did not run for reelection. On its first night of business, the new city council passed a resolution and ordinance[2] stating that Zilich had violated the city charter's residency requirement and that he had never been qualified to hold office. The ordinance also authorized the law director to collect the salary paid to Zilich during his tenure. Zilich maintains that the resolution

---

1. The residency question as to Zilich is unclear but is not a matter that need concern us. He grew up in Garfield Heights and lived there on and off for thirty years. In 1986, however, he was living and registered to vote in another suburb of Cleveland. He purchased a home in Garfield Heights in June 1987, two and half years before the 1989 election. *After* he moved, the city changed the residency requirement from one to three years. Thus, there remain questions as to whether Zilich met the requirement because he had lived there previously with the intent to establish residency, and secondly, whether he was "grandfathered" in because he established his residence prior to the change in requirements.

2. Resolution 54–1991 stated:

A Resolution expressing the disapproval and outrage of the Council of the City of Garfield Heights in regard to the intentional disregard of Section 9 of the Charter of the City of Garfield Heights by former councilman George

Zilich and demanding that he return all compensation received during his tenure as councilman because of his intentional violation of the charter provisions of this city....

*SECTION 1.* The Mayor and this Council, on behalf of the residents of the City of Garfield Heights, join together to express their disapproval and outrage over the intentional disregard of Section 9 of the Charter of the City of Garfield Heights by former councilman George Zilich during his tenure as Councilman, and demand that he return all compensation given to him in renumeration (sic) for his service as *Councilman because of his being in violation* of this provision of the City Charter.

Ordinance 112–1991 provided:

An ordinance authorizing and directing the Director of Law to take whatever action is necessary, legal or otherwise, to collect the salary received by former Councilman George Zilich during his previous two year term as Councilman at which time he was intentionally violating Section 9 of the Charter of the City of Garfield Heights.

was part of the ongoing conspiracy to harass and intimidate him, and was meant to threaten him and to ruin his political career.

The district court viewed these events as related, inferring that the evidence supported a common conspiracy to ruin plaintiff's reputation and political future. It held that the resolution and ordinance constituted a bill of attainder and that their passage was in retaliation for plaintiff's exercise of his First Amendment rights. We conclude that the resolution and ordinance are not a bill of attainder and that their passage did not violate plaintiff's clearly established First Amendment rights; therefore, defendants are entitled to qualified immunity on these claims. If proven, however, the other allegations of harassment clearly would violate the First Amendment.

## II. Bill of Attainder Claim

█ Zilich argues that the resolution and ordinance passed by the city council constitute a bill of attainder adopted in violation of Article I § 10 of the Constitution ("No State shall ... pass any Bill of Attainder"). A bill of attainder is a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Selective Service System v. Minnesota Public Interest Research Group,* 468 U.S. 841, 846–47, 104 S.Ct. 3348, 3352, 82 L.Ed.2d 632 (1984) (quoting *Nixon v. Administrator of General Services,* 433 U.S. 425, 468, 97 S.Ct. 2777, 2802–03, 53 L.Ed.2d 867 (1977)). Thus, there are three essential elements to a bill of attainder: "specificity ..., punishment, and lack of a judicial trial." *Selective Service,* 468 U.S. at 847, 104 S.Ct. at 3352. Applying these factors, the court below found that "[t]he Resolution and Ordinance in question represents a classic case of a bill of attainder" and noted that "the Ordinance and Resolution was passed without the benefit of a trial, and remains an enforceable piece of legislation." The district court rejected the defendants' qualified immunity defense and held that the council was not judging the qualifications of one of its members, but instead sought "to deprive an individual of his property without the benefit of a trial." In

doing so the court held that "the defendants' purpose in passing the legislation was punitive in nature."

We believe the district court misunderstands the situation for several reasons. First, the city council merely passed an ordinance authorizing the law director to go to court in order to recover amounts it considers illegally received by the plaintiff. The ordinance does not purport to confiscate or take title to any of Zilich's property. Whether the city actually recovers will depend entirely on a court judgment, not on a legislative usurpation of the judicial power to adjudicate an individual dispute. Because the ordinance simply authorizes the law director to seek collection of plaintiff's salary, "no feature of the challenged Act falls within the historical meaning of legislative punishment." *Nixon,* 433 U.S. at 475, 97 S.Ct. at 2806.

█ Second, § 11 of the Garfield Heights City Charter says that the "Council shall be the judge of the election and qualifications of its members." This same power is also given to non-charter municipalities by a state statute which provides that "the legislative authority of a municipal corporation shall be the judge of the election and qualifications of its own members." Ohio Rev.Code § 731.44. Both the charter and the state constitution reflect the well-settled principle that a legislature traditionally has the power to judge the so-called "standing" qualifications (age, residency, citizenship) of its membership. *See generally Powell v. McCormack,* 395 U.S. 486, 518–49, 89 S.Ct. 1944, 1962–79, 23 L.Ed.2d 491 (1969); *Hitt v. Tressler,* 4 Ohio St.3d 174, 447 N.E.2d 1299, 1302 (1983).

Plaintiff has not cited, and our research has not disclosed, a single case in which a court has held that judging a member's qualifications constitutes a bill of attainder. The Bill of Attainder Clause is a "safeguard against legislative exercise of the judicial function, or more simply—trial by legislature." *Song v. Elyria,* 985 F.2d 840, 844 (6th Cir.1993) (citation omitted). The "section proscribing bills of attainder ... establishes that there are certain types of decision that are ... inappropriate for *legislative* resolution.... [T]he bill of attainder clause should be viewed ... as necessary to the effective

separation of powers." Note, *The Bounds of Legislative Specification: A Suggested Approach to the Bill of Attainder Clause,* 72 Yale L.J. 330, 343 (1962) (emphasis in original). The legislative act of judging one's own members cannot be deemed a matter inappropriate for legislative resolution when the city charter specifically grants the council this power. Where the role is traditionally a legislative function, not a judicial function, the Bill of Attainder Clause does not outlaw legislative action against a specific legislator. Legislative bodies may censure, suspend or otherwise discipline a member. They have done so under English and American law for centuries. *Powell,* 395 U.S. at 522–38, 89 S.Ct. at 1964–73 (discussing the impact of English precedent on the Framers' adoption of standing qualifications and the authority of Congress to expel members). The absence of a trial here is not problematic or even surprising because judging a member's qualifications is a legislative function, not a judicial one.

Finally, the fact that the city council's action came after the plaintiff was no longer a member does not matter. A state court may decide that the city council exceeded its power under state law precisely because plaintiff was a former member. This is a matter more properly to be determined under state law. The city council may authorize its city attorney to initiate a lawsuit against a former member of that body. It is not a proper role for federal courts to determine these local political matters under the Bill of Attainder Clause.

### III. First Amendment Claim

■ Plaintiff argues that the resolution and ordinance in question were passed in retaliation for his expressions of hostility toward the mayor and his criticisms of the mayor's conduct and that such a pattern of retaliatory voting and official legislative action violates the Free Speech Clause. As we have previously said, legislative bodies are entitled to judge and express their opinions concerning the qualifications of members based on residency, and they have the power to authorize the law director to sue on behalf of the city. A legislative body does not violate the First Amendment when some members cast their votes in opposition to other members out of political spite or for partisan, political or ideological reasons. Legislators across the country cast their votes every day for or against the position of another legislator because of what other members say on or off the floor or because of what newspapers, television commentators, polls, letter writers and members of the general public say. We may not invalidate such legislative action based on the allegedly improper motives of legislators.

Congress frequently conducts committee investigations and adopts resolutions condemning or approving of the conduct of elected and appointed officials, groups, corporations and individuals. Members often vote to do so, at least in part, because of what the target of their investigation or resolution has said or for purely partisan and ideological reasons. The First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering through the adoption of legislative resolutions. *See generally Bond v. Floyd,* 385 U.S. 116, 135–36, 87 S.Ct. 339, 349, 17 L.Ed.2d 235 (1966) ("The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy"). This principle protects Zilich's right to oppose the mayor without retribution and it also protects defendants' right to oppose Zilich by acting on the residency issue which was left unresolved for over two years.

■ Voting on legislative resolutions expressing political viewpoints may itself be protected political speech.[3] Such resolutions

---

3. *Compare Miller v. Hull,* 878 F.2d 523, 532 (1st Cir.) (probably unassailable that elected officials' votes come within the freedom of speech guarantee of the First Amendment), *cert. denied,* 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989) *with Spallone v. United States,* 493 U.S. 265, 302–03 n. 12, 110 S.Ct. 625, 646 n. 12, 107

L.Ed.2d 644 (1990) (dissenting opinion) (four members of Supreme Court rejecting petitioner's claim that voting is "core political speech" and noting that "attempt to recharacterize the common-law legislative immunity doctrine into traditional First Amendment terms is unpersuasive"). The D.C. Circuit also held that a councilmem-

are simply the expression of political opinion. They do not control the conduct of citizens or create public rights and duties like regular laws. *Little v. North Miami,* 805 F.2d 962, 967 (11th Cir.1986) ("resolution is 'merely declaratory of the will of the corporation in a given matter' and not 'a continuing regulation [or a] permanent rule of government'"). A legislative resolution expressing the political view that flag burning, abortion, lewd films or illegitimacy are morally wrong is not a "law ... abridging the freedom of speech." It is not a law at all in the normal sense of the word.

The legislative body here passed a *resolution* "expressing the disapproval and outrage of the council." It does not have the effect of a "law." The ordinance merely authorizes the law director to file a lawsuit against plaintiff. As noted in the bill of attainder section above, the ordinance contains no punishment or penalty. We therefore do not consider these two hortatory measures to violate plaintiff's First Amendment rights.

■ This appeal is before us solely on the issue of qualified immunity. Unlike many such cases, however, we do not discuss whether the rights asserted by plaintiff are "clearly established" because even accepting plaintiff's allegations as true we do not believe *any* constitutional violation has occurred. Our "substantive" rejection of plaintiff's claim effectively disposes of the qualified immunity issue. While this type of case is unusual, it is not unprecedented. In *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), the Supreme Court set forth the appropriate analysis in the qualified immunity context where the court makes the legal determination that plaintiff fails to state a claim:

> A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on the merits.

As in *Siegert,* the claim here "failed at an analytically earlier stage of the inquiry into qualified immunity: His allegations, even if accepted as true, did not state a claim for violation of any rights secured to him under the United States Constitution." *Id.* at 227, 111 S.Ct. at 1791. Thus, as to the bill of attainder and First Amendment claims involving the resolution and ordinance, all defendants are entitled to qualified immunity.

## IV.   First Amendment/Harassment Claim

■ The alleged threats of physical violence outside the legislative arena by some defendants in response to plaintiff's opposition during his term in office present a different question because "[r]etaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Fraternal Order of Police Hobart Lodge #121, Inc. v. Hobart,* 864 F.2d 551, 553 (7th Cir.1988); *see also Reichert v. Draud,* 701 F.2d 1168, 1170 (6th Cir.1983); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The district court correctly held that defendants are not entitled to qualified immunity for this misconduct.

■ As noted above, Zilich's allegations of harassment are supported by the testimony of Thomas Furth, who attended meetings in which the mayor and others discussed threatening Zilich, slapping him around, breaking his legs, "cutting him" and intimidating him. These threats coincided with the vandalism and harassing telephone calls that plaintiff and his wife experienced. The defendants maintain that the threats were "jokes," but Furth testified that none were made in a joking manner. Only a trial will permit Zilich the full opportunity to prove defendants' involvement in the actions taken

---

ber's vote is speech protected by the First Amendment. *Clarke v. United States,* 886 F.2d 404 (D.C.Cir.1989) (right to vote freely within broad protections of the First Amendment). This opinion, however, was vacated as moot by an *en banc* panel of the D.C. Circuit. *Clarke v. United States,* 915 F.2d 699 (D.C.Cir.1990).

against him. The defendants respond that these actions, even if true, were "anonymous" and thus cannot provide the basis for a suit under 42 U.S.C. § 1983. Here, it is alleged that the mayor and other city officials—on city time and in city offices—plotted to injure plaintiff for his political views. In light of the resolution and ordinance demonstrating hostility toward plaintiff, these allegations, if proved, are sufficient to support a conclusion that defendants were acting under color of official right.

We also agree with the findings of the district court that Zilich's First Amendment right of free speech was "clearly established" for qualified immunity purposes. The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional, and "retaliation claims" have been asserted in various factual scenarios. *Meyers v. City of Cincinnati,* 979 F.2d 1154 (6th Cir.1992) (firemen dismissed); *Boger v. Wayne County,* 950 F.2d 316 (6th Cir.1991) (county employee in Medical Examiner's Office transferred); *Draud,* 701 F.2d at 1170 (change in public school teacher's duties); *Hildebrand v. Board of Trustees,* 662 F.2d 439 (6th Cir. 1981) (university professor denied tenure), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (prisoner retaliated against for seeking access to courts). No reasonable official could possibly believe that it is constitutionally permissible to retaliate against a political opponent with physical threats, harassment and vandalism. Because officials "of reasonable competence could [not] disagree on this issue, immunity should [not] be recognized." *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir.1993).[4]

Thus we conclude that the district court erred in holding that the bill of attainder and First Amendment claims based on the resolution and ordinance should go forward to a trial on the merits. We agree that the First Amendment claim based on threats or acts of physical violence should go to trial. Accordingly we affirm in part and reverse in part and remand the case for further proceedings consistent with this opinion.[5]

---

4. Because the surviving First Amendment retaliation claim is based on the prior harassment, those defendants who are not alleged to have taken any actions to harass plaintiff are entitled to dismissal. On remand, the district court should determine which defendants should remain in the case on this claim.

5. The district court also denied summary judgment on Zilich's state law defamation claim involving the passage and publication of the resolution and ordinance. This ruling is a collateral order which is not subject to review. *Marrical v.*

*Detroit News, Inc.,* 805 F.2d 169 (6th Cir.1986). The court in *Marrical* discussed review of state immunity issues, distinguishing between state immunity from suit (which would permit an interlocutory appeal) and immunity from liability (which would not). *Id.* at 173–75. Here, the Ohio immunity statute appears to grant immunity from liability, not suit. Ohio Rev.Code § 2744.03(A) ("immunities may be asserted to establish non-liability"). Accordingly, the Court declines to address this question.