Barbara **RICHARDS**, Plaintiff,

v.

**SANDUSKY COMMUNITY SCHOOLS,** and James R. Nolan, Superintendent, **Defendants.**

No. 99–CV–73757–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 18, 2000.

Peter J. Kelley, Kelley & Cramer, Ann Arbor, MI, Stephen R. Estey, Cox, Hodgman, Troy, MI, Jean M. Rosella, Ann Arbor, MI, Peter J. Osetek, Ann Arbor, MI, for plaintiff.

Timothy J. Mullins, Stephen R. Estey, Cox, Hodgman, Troy, MI, for defendants.

## *OPINION*

DUGGAN, District Judge.

On July 29, 1999, plaintiff Barbara Richards filed a three-count complaint against defendants, Sandusky Community Schools and its superintendent James R. Nolan, alleging a violation of 42 U.S.C. § 1983 based upon her First Amendment right to communicate violations of health and safety laws (Count I), violation of Michigan's Whistleblower Act (Count II), and defamation (Count III). This matter is currently before the Court on defendants' motion for summary judgment. Oral argument regarding defendants' motion was heard on May 11, 2000. For the reasons stated below, defendants' motion for summary judgment shall be granted.

## *Background*

Plaintiff began working for defendant Sandusky Community Schools as a substitute bus driver on January 27, 1997, and was subsequently hired as a full-time bus driver on November 21, 1997. During the 1998–1999 school year, Tonya, a severely mentally impaired child, was assigned to plaintiff's bus. In conformance with the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et. seq.*, an Individualized Education Program ("IEP") was developed for Tonya, under which Tonya was to ride a standard school bus with children in grades K–12. According to defendants, the IEP could not be changed without an additional evaluation by the Individual Evaluation Plan Committee ("IEPC").

Toward the end of January 1999, plaintiff began complaining that Tonya was "spitting" at her and the other children on the school bus. On January 27, 1999, plaintiff filed a "Bus Communication Report," indicating that Tonya had "spit right in [her] face" and that Tonya had been spitting on the bus for the last week. (Pl.'s Resp., Ex. 2). In response to plaintiff's report, the transportation supervisor, Sally Peterson, requested that an IEPC be held to determine whether Tonya should remain on a standard bus. (*Id.*). In her response, Peterson noted that "neither Barb or I feel [Tonya] should be transported on a Sandusky bus, we are not equip[p]ed to handle her." (*Id.*).

On the same day, defendant Nolan, who was out of town at the time, was notified by his secretary that plaintiff's husband had contacted his office regarding Tonya's behavior and "claiming that Tonya posed a health threat to the community." (Nolan Aff. at ¶ 6). Defendant Nolan then contacted plaintiff, who explained that she was concerned about Tonya's spitting on the bus. (*Id.* at ¶ 7). Defendant Nolan set up an IEPC meeting for February 3, 1999, to determine whether Tonya should remain on plaintiff's bus and whether Tonya posed any health threat to plaintiff or the other children on the bus.

At the IEPC meeting on February 3, which plaintiff herself attended, it was determined that Tonya posed no health risk to plaintiff or the other children and that no change in her transportation was necessary. (Defs.' Br. Supp. Mot. Summ. J., Ex. H). On February 4, 1999, plaintiff submitted a "Bus Communication Report," dated February 1, 1999, complaining that "Tonya was spitting on the bus again this morning."[1] (*Id.*, Ex. F).

To relieve plaintiff's concerns, defendant Nolan purchased baby wipes and other

---

**1.** Although the report is dated February 1, 1999, a notation on the bottom of the report indicates that it was submitted, by hand, to the transportation supervisor the day after Tonya's IEPC meeting on February 3.

sanitization products for plaintiff to keep on her bus. Furthermore, on February 9, 1999, defendant Nolan received a letter from Tonya's physician indicating that Tonya did not have any communicable diseases and did not pose a health threat to plaintiff or the other children on the bus. (*Id.*, Ex. B). Defendant Nolan gave this letter to plaintiff and her union representative.

After the IEPC meeting, plaintiff's husband began calling and writing defendant Nolan, requesting information regarding school policy. Plaintiff's husband also contacted the parents of other students who rode the bus with Tonya. Several of the parents then contacted the school regarding the husband's phone calls. According to some of these reports, plaintiff's husband told them that diseases, such as Hepatitis B and Aids, could be spread when Tonya spit.[2] (*Id.*, Ex. I). According to one report, filed by one of the parents who happened to be a transport supervisor, when asked where he got their name and number, plaintiff's husband explained "that he had the bus list with names and numbers." (*Id.*).

Tonya's parents eventually filed a Title IX grievance with the school. In their grievance, Tonya's parents alleged that Tonya had been discriminated against by plaintiff's husband calling other parents and telling them that their children could catch a disease, by plaintiff failing to follow Tonya's IEP, and by plaintiff showing a total disregard for Tonya's handicap. (*Id.*, Ex. J).

Defendant Nolan then met with plaintiff, her union representative, and the transportation director regarding plaintiff's conduct. According to defendants, "[p]laintiff did not deny that the telephone calls were made and that her husband was given

access to confidential information." (*Id.* at 7). On February 18, 1999, plaintiff was suspended from work for three days for releasing, to her husband, the names and telephone numbers of the students that rode her bus, and a disciplinary letter was placed in her file.[3] (*Id.*, Ex. K). Plaintiff never contested her suspension, nor did plaintiff ever file a grievance with the union regarding the above incidents.

On March 8, 1999, plaintiff was assigned to another bus route. Plaintiff admits that the transfer was not a demotion and resulted in no reduction in pay; however, plaintiff asserts that her new bus route was less desirable because there were "difficult" children on her new route, and "because [she] really liked [her] route." (Richards Dep. at 100).

On March 29, 1999, plaintiff resigned from her position. Plaintiff's resignation letter stated the following:

> As you know our family will be moving to Cadillac Michigan on April 10, 1999. Please consider this letter as my two week notice making my last day of work April 9, 1999. It has been a pleasure to work with you and the Sandusky Public School system. I remain,
>
> Sincerely Yours,
>
> /s/
>
> Barbara A. Richards

(Defs.' Br. Supp. Mot. Summ. J., Ex. A).

On April 26, 1999, defendant Nolan received a request for verification regarding plaintiff's employment and an inquiry regarding her professional conduct from the Manton School District, where plaintiff applied for a job as a bus driver. Accompanying the request was an authorization for release signed by plaintiff. (*Id.*, Ex. M). When responding to the request, defen-

---

**2.** According to plaintiff, Tonya's gums would often bleed.

**3.** Plaintiff's disciplinary letter stated:
  In direct violation of District policy as well as Federal and State law, you released to your husband, Curtis Richards, the names

and telephone numbers of your student bus riders. With your knowledge, your husband telephoned parents on the list, alleging that Tonya was creating a health problem on the bus.
(Defs.' Br. Supp. Mot. Summ. J., Ex. K).

dant Nolan checked the line that stated "[h]as had unprofessional conduct while employed with our company." (*Id.*). Defendant Nolan also provided the Manton School District with a copy of plaintiff's disciplinary letter. (Nolan Aff. at ¶ 24). Plaintiff did not receive the bus driver position with the Manton School District. Thereafter, plaintiff filed the instant law suit against defendants.

### Discussion

. Defendants have filed a motion for summary. On a motion for summary judgment, the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Therefore, the moving party bears the initial burden of demonstrating the absence of evidence in support of the nonmoving party's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the moving party has sustained his burden, the nonmoving party must come forward with sufficient evidence to establish a genuine issue of material fact. The nonmoving party, however, "is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting FED. R. CIV. P. 56(e)). "[T]here must be evidence on which the jury could reasonably find for the [nonmoving] party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### 1. § 1983 Claim

■ Plaintiff asserts that defendants have retaliated against her for exercising her First Amendment right of freedom of speech in violation of 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiff must prove that "1) [s]he was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by someone acting under color of state law." *Perry v. McGinnis*, 209 F.3d 597, 603 (6th Cir.2000). "[R]etaliation by a government employer against an individual who exercises his First Amendment rights constitutes a First Amendment violation." *Id.* at 604 (citing *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir.1994)). "This is the case even if the employee could have been terminated for any reason." *Id.* (citing *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987)).

■ To establish a First Amendment retaliation claim, plaintiff must prove that "'(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two— that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir.2000) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)). "[T]his analysis focuses on whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected activity." *Id.* (citing *Mattox v. City of Forest Park*, 183 F.3d 515, 520–21 (6th Cir.1999)). Once plaintiff meets her burden of establishing a claim of First Amendment retaliation, "the burden then shifts to the defendants to prove by a preponderance of the evidence that the employment decision

would have been the same absent the protected conduct." [4] *Id.* (citing *Kreuzer v. Brown,* 128 F.3d 359, 363 (6th Cir.1997), *cert. denied,* 523 U.S. 1121, 118 S.Ct. 1802, 140 L.Ed.2d 941 (1998); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Defendants contend that plaintiff has failed to establish a First Amendment retaliation claim because she has failed to demonstrate that she was deprived of her free speech rights, that the protected speech was a substantial factor in any adverse employment action, or that the alleged adverse action arose as a result of a policy or custom of defendant Sandusky Community Schools.

### A. Protected Activity

At oral argument, counsel for plaintiff identified plaintiff's protected activity as:

1. The filing of a series of bus communication reports during the time period of January 27, 1999 through February 4, 1999;

2. Verbalization of her health concerns to defendant Nolan; and

3. Verbalization of her health concerns to her husband.

Defendants, however, contend that plaintiff was not engaged in constitutionally protected activity because her "continued complaints against this child were based on personal dislike rather than a legitimate professional concern," and therefore, plaintiff's "slanderous" remarks were not pro-

tected.[5] (Defs.' Br. Supp. Mot. Summ. J. at 12).

"The First Amendment protects speech that may be 'fairly characterized as constituting speech on a matter of public concern.'" *Lucas,* 203 F.3d at 973. "'In order to conclude that speech addresses a matter of public concern, "this [C]ourt must be able to fairly characterize the expression as relating to any matter of political, social, or other concern to the community."'" *Id.* (quoting *Chappel v. Montgomery County Fire Protection Dist. No. 1,* 131 F.3d 564, 574 (6th Cir.1997) (citation omitted)). "'[T]he fundamental distinction recognized in *Connick* is the distinction between matters of public concern and matters only of personal interest, not civic-minded motives and self-serving motives.'" [6] *Perry,* 209 F.3d at 608–09 (quoting *Chappel,* 131 F.3d at 575).

In response to defendants' accusations, plaintiff contends that she raised her concerns in conformance with training provided by defendant Sandusky Community Schools "that required her to assume that Tonya was contagious." [7] (*Id.* at 7). Viewing the evidence presented in a light most favorable to plaintiff, as the Court must do on a motion for summary judgment, the Court is satisfied that plaintiff's concerns that both herself and the other children on the bus may have been exposed to communicable diseases due to Tonya's spitting constituted a matter of concern to the community, or at the very least, to the other children on the bus and their parents.

---

4. In *Sowards,* the Sixth Circuit stated that the burden-shifting analysis typically used to evaluate Title VII claims does not apply to First Amendment retaliation claims. *See Sowards,* 203 F.3d at 431 n. 1.

5. Defendants initially contend that plaintiff was never denied the opportunity to exercise her First Amendment rights. In First Amendment retaliation cases, however, the pertinent question is not whether the plaintiff was denied the opportunity to exercise her First Amendment rights; rather, the pertinent question is whether the plaintiff was retaliated against for doing so.

6. Referring to *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

7. In support of her contention, plaintiff cites defendant Sandusky Community School's "Exposure Plan," which states that "[a]ll blood or other contaminated body fluids shall be considered to be infectious," and that when "differentiation among body fluids is difficult or impossible, all body fluids shall be considered potentially infectious materials." (Pl.'s Resp. at 9).

The fact that plaintiff expressed her concerns mostly in conversations or reports to her supervisors does not alter the protected nature of such activity. *See Perry*, 209 F.3d at 608 (" 'Neither the [First] Amendment itself nor our decisions indicate that [freedom of speech] is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public.' ") (quoting *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1979)). Accordingly, the Court cannot say, as a matter of law, that plaintiff did not engage in protected activity.

### B.   Adverse Action/Causal Connection

Nonetheless, the Court believes that defendants are entitled to summary judgment with respect to plaintiff's First Amendment retaliation claim because, based upon the evidence before the Court, no jury could reasonably conclude that plaintiff's alleged protected activity motivated, in substantial part, an adverse employment action.   Plaintiff has identified the adverse actions, which form the basis of her claims, as:

1.   Plaintiff's three day suspension;

2.   Plaintiff's transfer to a different bus route; and

3.   Defendant Nolan's act of calling the superintendent of the Manton School

District regarding plaintiff's unprofessional conduct.[8]

■   First, with respect to plaintiff's suspension, the evidence establishes only that defendant Nolan believed, based upon the evidence before him at the time, that plaintiff had supplied her husband with a list of the names and numbers of the children who rode her bus [9] as well as information regarding Tonya's disability; that such action violated school policy, as well as state and federal confidentiality laws; and that as a consequence of such violation, plaintiff was suspended for three days.   (Nolan Dep. at 17–22, 39, Defs.' Br. Supp. Mot. Summ. J., Ex. I).   Plaintiff never contested the suspension by filing a dissent or grievance.

Plaintiff has presented no evidence that her suspension was connected to the protected activity identified above, *i.e.*, plaintiff's voicing of concern regarding the potential health risks associated with Tonya's spitting.   At most, the evidence establishes that plaintiff's suspension was based upon defendant Nolan's belief that plaintiff had disclosed confidential information to her husband. The fact that defendant Nolan's belief may have been erroneous does not, by itself, establish a causal connection between the suspension and plaintiff's protected activity.

■   Second, plaintiff contends that defendants retaliated against her by transferring her to another bus route.   Defen-

---

**8.**   In her response to defendants' motion for summary judgment, plaintiff lists the last adverse action taken by defendants as "interfering with her hire at the Manton Consolidated Schools by communicating both in writing and verbally with the Manton superintendent." (Pl.'s Resp. at 13).   At oral argument, however, counsel for plaintiff clarified that defendant Nolan's act of disclosing plaintiff's disciplinary letter to the Manton superintendent did not constitute an adverse action; rather, defendant Nolan's act of picking up the phone and calling the Manton superintendent to explain what plaintiff had done wrong was the adverse action.

**9.**   One of the parents contacted by plaintiff's husband, who happened to be a transport

supervisor, filed a "Record of Parent Contact" with defendant Nolan on February 7, 1999, indicating that plaintiff's husband had stated that "he had the bus list with names and numbers on it." (Def.'s Br. Supp. Mot. Summ. J., Ex. I).

Plaintiff contends that defendant Nolan "admitted" that plaintiff never provided her husband with confidential "school records." (Pl.'s Resp. at 8).   Although defendant Nolan admitted that the actual list that plaintiff's husband used to telephone the other parents was not itself a "school record," defendant Nolan went on to explain that he believed that plaintiff had copied the information on the list from a confidential school record.   (Nolan Dep. at 157–59).

dants, however, who admit that the transfer was caused, in part, by plaintiff's concerns, argue that plaintiff has failed to establish that the transfer constituted an adverse employment action. This Court agrees.

To constitute adverse action, the action must be such that it would "deter a person of ordinary firmness from continuing to engage in the conduct." *Sowards,* 203 F.3d at 431. Plaintiff must show that the employment action she suffered constituted a "materially adverse" change in the terms of her employment. *Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 886 (6th Cir.1996) (citing *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir. 1994); *Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987)). "[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions." *Id.* (citing *Yates,* 819 F.2d at 638).

Plaintiff admits that the transfer was not a demotion and resulted in no loss of pay. (Richards Dep. at 100). Plaintiff contends only that her new bus route was "a less desirable route" because there were difficult kids on it, and that she "really liked her route." (*Id.*). Such contentions, however, are insufficient to establish that plaintiff suffered an adverse employment action.

■ Third, plaintiff contends that she suffered an adverse employment action when the Manton School District did not hire her "primarily on the basis of the negative conversation had with the superintendent of the Sandusky Community Schools, Mr. Nolan." (Pl.'s Resp. at 19). Courts have recognized that a refusal to hire may constitute an adverse employment action. *See Thaddeus–X,* 175 F.3d at 396 ("The term 'adverse action' is drawn from employment case law; examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote."). In the case *sub judice,* however, it was the Manton School District, not defendants, that made the

decision not to hire plaintiff. In doing so, it would be the Manton School District that allegedly retaliated against plaintiff, not defendants.

Furthermore, plaintiff has presented no evidence that the Manton School District knew of her alleged protected activity, *i.e.,* her voicing of concern through the bus communication reports, to defendant Nolan, and to her husband. At most, plaintiff has presented evidence only that the Manton School District knew, through the disciplinary letter that was attached to the completed employment verification request, that plaintiff had been suspended for three days for releasing, to her husband, the names and telephone numbers of the children that rode her bus in violation of school policy.

Although plaintiff now alleges that defendant Nolan conveyed other information to the Manton School District superintendent during a telephone conversation, the only evidence plaintiff presented in support of her assertion was her own affidavit and deposition testimony. In her affidavit, plaintiff asserts that:

15. I was being trained and was told I could start as a substitute bus driver at the Manton district, when Mr. Nolan called the Superintendent of Manton and told him that he should not hire me.

16. Mr. Traviss, the Manton Administrative Assistant, told me that he would talk to Mr. Henthorne and tell him that he should still hire me.

17. However, because of what Mr. Nolan told Mr. Henthorne, I was not hired (See attached Deposition Exhibit 19).

(Richards Aff. at ¶¶ 15–17). Deposition Exhibit 19, however, is simply a copy of the completed verification request form that indicates nothing more than the fact that plaintiff had engaged in unprofessional conduct while employed by defendants. (Pl.'s Resp., Ex. 3).

Similarly, in her deposition testimony, plaintiff states that the superintendent of the Manton School District had informed

her that he could not hire her because of a conversation he had had with defendant Nolan. (Richards Dep. at 115). Plaintiff herself, however, admits that she does not know the substance of the alleged phone conversation. (*Id.*).[10]

Most importantly, as counsel for plaintiff conceded at oral argument, there is no evidence that the Manton superintendent's decision not to hire plaintiff was not based solely upon the information conveyed to the Manton School District in conjunction with its employment verification request. Plaintiff has failed to produce any evidence, beyond her own assertions, that the Manton School District's decision not to hire her was based upon anything other than the information contained in the disciplinary letter regarding her three day suspension. Because plaintiff has failed to provide evidence that the Manton School District had any knowledge of her alleged protected activity, the Court is satisfied that no reasonable jury could conclude that the school district's decision not to hire plaintiff was motivated, in substantial part, by plaintiff's alleged protected activity.

Accordingly, for the reasons stated above, the Court is satisfied that defendants are entitled to summary judgment with respect to plaintiff's First Amendment retaliation claim under § 1983.[11]

*2. Whistleblower Claim*

Plaintiff contends that defendants violated Michigan's Whistleblower Protection Act ("WPA") by "constructively discharging"[12] her for "reporting to the superintendent and other authorities the school district's violations of law and procedures."

10. Neither defendants' motion for summary judgment, nor plaintiff's response, include deposition testimony from the Manton superintendent or the Manton bus supervisor.

11. In their motion for summary judgment, defendants also contend that they are entitled to summary judgment because plaintiff has failed to establish, or even allege, that the alleged adverse action resulted from a policy

(Compl. at ¶¶ 36–37). The WPA states that:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

MICH. COMP. LAWS § 15.362.

Defendants contend that they are entitled to summary judgment with regard to plaintiff's WPA claim because plaintiff's claim is barred by the statute of limitations, plaintiff was not engaged in protected activity, and plaintiff suffered no adverse employment action.

*A. Statute of Limitations*

▮ The WPA provides that "[a] person who alleges a violation of [the Act] may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation." *Id.* § 15.363(1). Defendants contend that plaintiff's claims are barred because she did not file her complaint until July 29, 1999. According to defendants, the only two possible acts giving rise to a claim under the WPA would

or custom of defendant Sandusky Community Schools. Because the Court has already determined that defendants are entitled to summary judgment, the Court will not address the propriety of defendants' argument.

12. The Court notes that plaintiff did not assert constructive discharge as an adverse employment action in support of her § 1983 claim.

be plaintiff's suspension, which occurred from February 18, 1999 until February 23, 1999, or plaintiff's alleged "constructive discharge," which, according to defendants, occurred either on March 29, 1999 when plaintiff tendered her resignation letter, or April 2, 1999, which was the last day plaintiff worked. (Defs.' Br. Supp. Mot. Summ. J. at 14). All of these dates fall outside the WPA's statute of limitations and, therefore, if this Court accepts defendants' contentions, plaintiff's claims under the WPA are time-barred.

Plaintiff, however, contends that she "did not receive her acceptance letter regarding her resignation, which was dated April 29, 1999, until May 1st." (Pl.'s Resp. at 19). Therefore, according to plaintiff, defendants' last violation of the WPA occurred on May 1, 1999, when she was notified that her resignation had been accepted and, accordingly, her claims are not time-barred.

Under Michigan law, "a constructive discharge occurs only where an employer or its agent's conduct is so severe that a reasonable person in the employee's place *would feel compelled to resign.*" *Jacobson v. Parda Fed. Credit Union,* 457 Mich. 318, 328, 577 N.W.2d 881 (1998) (emphasis added). In determining the date of a plaintiff's constructive discharge, Michigan courts have looked to the date that the plaintiff tendered her resignation, not the date that such resignation was "accepted" by the employer. *See Jacobson,* 457 Mich. at 328, 577 N.W.2d 881 ("It seems, therefore, that our focus in these far more common situations must be on the moment of resignation."). Therefore, plaintiff's constructive discharge occurred on March 29, 1999, the date she tendered her resignation letter and accordingly, the Court finds that plaintiff's WPA claim is time-barred.[13]

### B. Protected Activity/Causal Connection

■ Even if this Court were to find that plaintiff's WPA claim fell within the 90-day statute of limitations, defendants would nonetheless be entitled to summary judgment because plaintiff has failed to establish a *prima facie* case under the WPA. To establish a *prima facie* case under the WPA, plaintiff must show that (1) she was engaged in a protected activity as defined by the WPA, (2) defendants discharged her, threatened to discharge her, or otherwise discriminated against her, and (3) a causal connection existed between the protected activity and the discharge/discrimination. *See Henry v. City of Detroit,* 234 Mich.App. 405, 409, 594 N.W.2d 107 (1999) (citing *Shallal v. Catholic Soc. Serv.,* 455 Mich. 604, 610, 566 N.W.2d 571 (1997)). "Protected activity" consists of (1) reporting to a public body a violation of a law, regulation, or rule, (2) being about to report such a violation to a public body, or (3) being asked by a public body to participate in an investigation. MICH. COMP. LAWS § 15.362; *Roulston v. Tendercare Michigan, Inc.,* 239 Mich.App. 270, 279, 608 N.W.2d 525, 529 (2000).

At oral argument counsel for plaintiff argued that plaintiff had contacted a number of different public bodies, including the school system, the Michigan Department of Health, local police, and state officials. In support of his argument, counsel for plaintiff directed the Court's attention to exhibit 7 of plaintiff's response, which includes a list, compiled from plaintiff's telephone bill, showing the dates and telephone numbers of various organizations contacted by plaintiff. (Pl.'s Resp., Ex. 7). In her deposition, however, plaintiff admitted that although she had contacted a number of public agencies to gather information regarding her concerns, she never

---

**13.** Furthermore, it is difficult for this Court to conclude that the conduct that plaintiff alleges is the basis for her constructive discharge, *i.e.,* the three day suspension and the transfer to a different bus route, constitutes "working conditions ... so intolerable that a reasonable person in plaintiff's position would have felt compelled to resign." *Jacobson,* 457 Mich. at 326, 577 N.W.2d 881.

filed a complaint with such agencies regarding defendants' alleged violations of health and safety laws.[14] (Richards Dep. at 59, 62–63).

■ The only evidence provided by plaintiff that would support a contention that she was "about to report" defendants' alleged health and safety violations is the fact that plaintiff received the appropriate paperwork from OSHA. Plaintiff, however, admitted that she never completed the paperwork. (Richards Dep. at 63). This fact, by itself, falls drastically short of the clear and convincing proof required under the WPA. *See* MICH. COMP. LAWS § 15.363(4) (requiring proof "by clear and convincing evidence that ... she or a person acting on ... her behalf was about to report, verbally or in writing, a violation or a suspected violation of a law of [Michigan], a political subdivision of [Michigan], or the United States to a public body").

Moreover, to establish a causal connection between the alleged protected activity and the adverse employment action, plaintiff must present evidence that defendants had "objective notice" of her intent to file a report or complaint. *See Roberson v. Occupational Health Ctrs. of Am., Inc.*, 220 Mich.App. 322, 326, 559 N.W.2d 86 (1996) (" '[A]n employer is entitled to objective notice of a report or a threat to report by the whistleblower.' ") (quoting *Kaufman & Payton, PC v. Nikkila*, 200 Mich.App. 250, 257, 503 N.W.2d 728 (1993)). Plaintiff has failed to produce any evidence that defendant Nolan, or anybody at the Sandusky Community Schools, had "objective notice" that she had contacted a public body regarding her concerns, or that she was allegedly about to file a report.

Accordingly, the Court is satisfied that plaintiff has failed to establish a *prima facie* claim under the WPA because she has failed to establish that she was engaged in protected activity, or that defendants had "objective" notice of such activity. Therefore, defendants are entitled to summary judgment with respect to plaintiff's WPA claim also.

*3. Defamation Claim*

Lastly, plaintiff alleges in her complaint that defendant Nolan defamed her by giving the Manton School District a negative recommendation and failing to accurately report her work history. (Compl. at ¶¶ 40–42). Defendants contend that they are entitled to summary judgment with regard to plaintiff's defamation claim because no defamatory statements were made. (Defs.' Br. Supp. Mot. Summ. J. at 17–18). Defendants also contend that plaintiff is barred from asserting this claim because she signed a release authorizing defendants to release such information to the Manton School District, and because defendants are immune from civil liability for such acts under Michigan law. (*Id.* at 18–20).

■ To sustain a claim of defamation, plaintiff must establish "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by the publication (defamation *per quod*)." *Kevorkian v. American Med. Ass'n*, 237 Mich.App. 1, 8–9, 602

14. In her response, plaintiff states that she "reported her health concerns regarding Tonya to her supervisor, the health department, and OSHA." (Pl.'s Resp. at 15). However, the portion of plaintiff's deposition cited in support of her assertion clearly indicates that although she did call OSHA for paperwork, she never filed a complaint with the Michigan Department of Health or OSHA. Specifically, plaintiff stated:

Q: Okay. Did you file or make a complaint with any specific governmental body such as OSHA, the Michigan Public Health Department, or anybody other than your employer?
A. No.
(Richards Dep. at 59).

N.W.2d 233 (1999). Defendants contend that plaintiff is unable to establish even the first element required under a defamation claim, a false and defamatory statement, because the information disclosed to the Manton School District was not false. (Defs.' Br. Supp. Mot. Summ. J. at 17).

In response to defendants' motion for summary judgment, plaintiff simply contends that defendant Nolan "acted in bad faith and with malice in commenting to Mr. Henthorne, the Manton Consolidated School District Superintendent, about [plaintiff]." [15] (Pl.'s Resp. at 21). Plaintiff, however, does not direct the Court's attention to any evidence in the record that supports her contention. In her deposition, plaintiff stated that her defamation claim was based upon the fact that, when requested, defendant Nolan sent the Manton School District a copy of plaintiff's disciplinary letter. Plaintiff also stated that defendant Nolan had a conversation with the superintendent of the Manton School District. Plaintiff, however, admits that she does not know what was said during that conversation, but only "that [the superintendent] was advised he couldn't hire me because of it." (Richards Dep. at 114–15). Plaintiff's allegations are insufficient to support a claim of defamation.

█ Furthermore, defendant Nolan did not make a "false" statement by disclosing plaintiff's disciplinary letter. Plaintiff was in fact disciplined. As discussed *supra*, plaintiff never contested her suspension. There is no evidence in the record that plaintiff's disciplinary letter was placed in the file with knowledge that the information contained within it was false. At most, the evidence establishes only that the disciplinary letter was placed in plaintiff's personnel file with knowledge that plaintiff contested defendant Nolan's finding that she had provided her husband

with the alleged confidential information. That fact, by itself, however, does not establish that the information contained in the letter was "false."

Moreover, plaintiff signed a release authorizing defendants to disclose any unprofessional conduct and to make available copies of all documents relating to such unprofessional conduct contained in plaintiff's employment records. (Defs.' Br. Supp. Mot. Summ. J., Ex. M). Although plaintiff admitted at her deposition that she knew the disciplinary letter was in her employment file, she contends that she did not understand that by signing the release, the letter would be turned over to the Manton School District. (Richards Dep. At 113–14). In support of her belief, plaintiff contends that she was told by her union representative, Gilbert Suzor, that defendant Nolan had said he would not disclose the disciplinary letter to any school with which plaintiff subsequently sought employment. (*Id.* at 116). Nothing in Suzor's affidavit, however, supports plaintiff's contentions. (Pl.'s Resp., Ex. 9). Furthermore, even assuming that defendant Nolan had made such a promise, the fact that defendant Nolan did subsequently release the disciplinary letter does not, by itself, constitute defamation.

Viewed in a light most favorable to plaintiff, the evidence before the Court merely establishes that when requested to do so, and with authorization from plaintiff, defendant Nolan provided the Manton School District with a copy of plaintiff's disciplinary letter, which, at the time, had remained uncontested by plaintiff. No reasonable jury could conclude from such facts that defendant Nolan acted in bad faith or with malice. Accordingly, the Court is satisfied that defendants are entitled to summary judgment with regard to plaintiff's defamation claim also.

---

**15.** Michigan law requires that a school district request certain information from at least the applicant's current employer, and provides that "[a]n employer, or an employee acting on behalf of the employer, that discloses information under this section in good faith is immune from civil liability for the disclosure." MICH. COMP. LAWS § 380.1230(b).

### Conclusion

For the reasons stated above, defendants' motion for summary judgment shall be granted and plaintiff's complaint shall be dismissed.

A Judgment consistent with this Opinion shall issue forthwith.