**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 19 2000**

**PATRICK FISHER**
**Clerk**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

ELIZABETH PHELAN,

      Plaintiff - Appellant,

    v.

LARAMIE COUNTY COMMUNITY
COLLEGE BOARD OF TRUSTEES;
CHARLES BOHLEN; CHERYL W.
PORTER; JOHN R. KAISER; LARRY
ATWELL; DONALD J. BROWN;
TOM E. BAUMAN; JEAN
VONDRAK BROWN, in their
individual capacity,

      Defendants - Appellees.

----------------------------------
ASSOCIATION OF COMMUNITY
COLLEGE TRUSTEES,

      Amicus Curiae.

No. 99-8095

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D. Ct. No. 99-CV-52-J)**

---

Bernard Q. Phelan, Phelan-Watson Law Offices, Cheyenne, Wyoming, for
Plaintiff-Appellant.

Henry F. Bailey, Jr. (Wallace L. Stock, with him on the brief), Bailey & Stock,
Cheyenne, Wyoming, for Defendants-Appellees.

Ira M. Shepard, Paul M. Heylman, and Trina L. Fairley, Schmeltzer, Aptaker & Shepard, P.C., Washington, DC; John A. Coppede and Michelle Pinkowski, Rothgerber, Johnson & Lyons, LLP, Cheyenne, Wyoming, filed an Amicus Curiae brief on behalf of the Association of Community College Trustees.

---

Before **SEYMOUR**, Chief Judge, **TACHA**, and **EBEL**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Plaintiff Elizabeth Phelan appeals the district court's grant of Defendant's motion for summary judgment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

Plaintiff Elizabeth Phelan has served as a member of the Board of Trustees for Laramie County Community College ("Board") since the college opened in 1968. Claiming a violation of her First Amendment rights, Ms. Phelan sued the Board and each Board member in their individual capacities under 42 U.S.C. § 1983. She sought injunctive and declaratory relief in the district court, arguing the Board abridged her First Amendment rights by censuring her for violating its ethics policy .

In 1980, the Board adopted Policy 1530, its code of ethics. Ms. Phelan voted for the policy in 1980, and again in 1985 and 1994. The code describes the manner in which Board members agree to discharge their duties and

responsibilities. The provision at issue provides: "[I will] base my personal decision upon all available facts in each situation; to vote my honest conviction in every case, unswayed by partisan bias of any kind; *thereafter to abide by and uphold the final majority decision of the Board*." (emphasis added). In addition to adopting the ethics policy, Ms. Phelan also signed a general oath each time she was elected, pledging to discharge her duties as trustee "faithfully, honestly, and impartially."

In August 1998, the Board began discussing how to fund the repair and renovation of main campus facilities. Specifically, the Board explored two approaches to funding the campus renewal plan: a five mill property tax assessment or general obligation bonds. The Board discussed the issues concerning the funding options at an open meeting on August 13, 1998, and again on August 19, 1998, at a published Board meeting during which the Board voted on the renewal plan and appropriate funding. All members of the Board, including Ms. Phelan, voted in favor of the renewal plan and to present the five mill tax assessment to the public for popular vote.

Despite her vote in favor of submitting the five mill tax assessment to the public, Ms. Phelan placed an advertisement in the local newspaper encouraging the public to vote against the measure. The advertisement ran on November 2, 1998, the day before the public vote. Identifying Ms. Phelan in her role as

"Trustee," the advertisement supported the election of Richard "Dick" Lennox for trustee, declared college enrollment had declined fifteen percent, and urged voters to vote against the five mill tax assessment. Although the tax assessment passed, it did so by a much narrower margin than Board members expected.

On December 16, 1998, the Board voted to censure Ms. Phelan for violating its ethics policy. In censuring Ms. Phelan, the Board expressed its belief that her conduct in running the newspaper advertisement was contrary to the ethics policy and potentially detrimental to the college. The censure also asked her to discontinue this "inappropriate" behavior. The Board based its censure on the language in the ethics policy that requires trustees "to abide by and uphold the final majority decision of the Board," concluding Ms. Phelan's advertisement sought to undermine the final majority decision of the Board and provided false information to the public by stating enrollment had dropped fifteen percent.

Ms. Phelan later filed a § 1983 suit in federal district court, claiming that the Board's formal censure punished her by tarnishing her public reputation in violation of her free speech rights under the First and Fourteenth Amendments of the United States Constitution. She also sued Charles Bohlen, the college president, asserting he is subject to liability under § 1983 because he conspired with the Board to deprive her of her constitutional rights. The district court

granted the Board's motion for summary judgment. We affirm the district court's result, although we do so based on a different rationale. United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law . . . ."). We construe the complaint as a challenge to the ethics policy as applied (in censuring Ms. Phelan), and we hold the ethics policy does not violate the First Amendment because it did not penalize Ms. Phelan for exercise of her free speech rights.

## II. Standard of Review

We review a district court's grant of summary judgment de novo. Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ms. Phelan concedes, however, that no genuine issues of material fact are in dispute. When no genuine issue of material fact is in dispute, "we determine whether the district court correctly applied the substantive law." Simms, 165 F.3d at 1326.

When First Amendment issues are raised, our review is also de novo. Lytle

v. City of Haysville, 138 F.3d 857, 862 (10th Cir. 1998) (quoting Rankin v. McPherson, 483 U.S. 378, 386 n.9 (1987)).  When the First Amendment arguably protects the activity in question, "'an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression.'" Id.

### III.  Discussion

The Board contends, and the district court agreed, that we should use the balancing approach established in Pickering v. Board of Education, 391 U.S. 563, 568 (1968), to analyze Ms. Phelan's free speech rights.  The Pickering approach balances a public *employee's* interest "in commenting upon matters of public concern" with the government's interest in "promoting the efficiency of the public services it performs through its employees."  Id.; see also Connick v. Myers, 461 U.S. 138, 147-49 (1983) (creating clear two-step test); McEvoy v. Shoemaker, 882 F.2d 463, 466 (10th Cir. 1989) (defining matter of "public concern").  The Supreme Court has also applied the Pickering approach in the context of governmental contractors, concluding the government's relationship with contractors is similar to its relationship with employees because the government exercises contractual power and functions as a public service provider in both contexts.  Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 678 (1996).

The Pickering line of cases does not, however, apply to facts like those in the case we consider today. Ms. Phelan is not a governmental employee or contractor; indeed, the Board members and Ms. Phelan occupy the same positions as elected public officials. Furthermore, this case does not involve the government's exercise of contractual power or its "daily management functions," factors which form the underlying factual basis for judicial deference and the application of the Pickering approach in the governmental employee and contractor contexts. Id.

Although we hold the Pickering approach does not apply, we need not apply an alternative approach to determine whether the Board has violated Ms. Phelan's First Amendment rights because the Board's censure does not trigger First Amendment scrutiny.[1] In order for governmental action to trigger First Amendment scrutiny, it must carry consequences that infringe protected speech.[2] U.S. West, Inc. v. FCC, 182 F.3d 1224, 1232 (10th Cir. 1999) ("As a threshold

---

[1] Ms. Phelan alleges that the Board's censure tarnished her public reputation. Although this alleged harm to her reputation is sufficient to establish standing, Meese v. Keene, 481 U.S. 465, 472-77 (1987), it is not enough to establish an abridgement of her free speech rights.

[2] Because political speech is entitled to the "broadest protection," Ms. Phelan's speech is clearly protected. See Buckley v. Valeo, 424 U.S. 1, 14 (1976); see also Bullock v. Carter, 405 U.S. 134, 142-43 (1972) (noting that speech of political candidates affects rights of both candidates and voters); U.S. West, Inc., 182 F.3d at 1232 (acknowledging "speech has two components: a speaker and an audience.").

requirement for the application of the First Amendment, the government action must abridge or restrict protected speech."). The Board's censure does not satisfy this threshold requirement. We therefore hold the Board's censure does not infringe any of Ms. Phelan's free speech rights because it did not punish her for exercising these rights. Nor does it deter her future speech.

Although the government may not restrict, or infringe, an individual's free speech rights, it may interject its own voice into public discourse. See Meese v. Keene, 481 U.S. 465, 480-82 (1987) (stating governmental classification of certain films as "political propaganda" was information to which public was entitled and did not infringe free speech rights of individuals who wished to show the films); Zilich v. Longo, 34 F.3d 359, 363-64 (6th Cir. 1994) (holding city council resolution expressing disapproval of a former council member does not violate the First Amendment). The crucial question is whether, in speaking, the government is *compelling* others to espouse or to suppress certain ideas and beliefs. Wooley v. Maynard, 430 U.S. 705, 714-15 (1977) (striking down state statute compelling individuals to display state motto on license plates); W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943) (holding compulsory flag salute and pledge by public school children unconstitutional). In order to compel the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is

"regulatory, proscriptive, or compulsory in nature." Laird v. Tatum, 408 U.S. 1, 11 (1972). The consequence may be an "indirect discouragement," rather than a direct punishment, such as "imprisonment, fines, injunctions or taxes." Am. Communications Ass'n. v. Douds, 339 U.S. 382, 402 (1950). A discouragement that is "minimal" and "wholly subjective" does not, however, impermissibly deter the exercise of free speech rights. United States v. Ramsey, 431 U.S. 606, 623-24 (1977); see also Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n, 475 U.S. 1, 30 (1986) (Rehnquist, J. dissenting) ("When the potential deterrent effect of a particular state law is remote and speculative, the law simply is not subject to heightened scrutiny.").

Thus, the Supreme Court has held that, although the governmental action may "fall short of a direct prohibition," it must impose a specific collateral injury. Laird, 408 U.S. at 11 (citing example cases). Unlike the Board in the case we decide today, the government in the cases discussed by the Court wielded compulsory power that clearly abridged free speech rights. Id. Examples of governmentally imposed injuries include: denial of state bar admission, e.g., Baird v. State Bar, 401 U.S. 1, 5 (1971); loss of employment, e.g., Keyishian v. Bd. of Regents, 385 U.S. 589, 592 (1967); and the conditioning of employment on a vague oath, e.g., Baggett v. Bullitt, 377 U.S. 360, 361 (1964).

Based on the facts of this case, the Board's censure is clearly not a penalty

that infringes Ms. Phelan's free speech rights. In censuring Ms. Phelan, Board members sought only to voice their opinion that she violated the ethics policy and to ask that she not engage in similar conduct in the future. Their statement carried no penalties; it did not prevent her from performing her official duties or restrict her opportunities to speak, such as her right to vote as a Board member, her ability to speak before the Board, or her ability to speak to the public. See Zilich, 34 F.3d at 364 (holding city council resolution did not violate First Amendment because it was not law and contained no penalty); see also Peeper v. Callaway County Ambulance Dist., 122 F.3d 619, 623 n.4 (8th Cir. 1997) (recognizing that "[l]imitations on an elected official's participation in the proceedings of a public body . . . affect the official's First Amendment free speech rights").

In short, the Board's actions have not injured Ms. Phelan's free speech rights. See Laird, 408 U.S. at 12-13 (noting the requirement that an individual demonstrate injury in order to challenge executive or legislative action). Ms. Phelan argues she has been injured because the Board's actions tarnished her reputation. In the First Amendment context, however, injury to one's reputation is not enough to defeat constitutional interests in furthering "uninhibited, robust" debate on public issues. New York Times Co. v. Sullivan, 376 U.S. 254, 270, 279-80 (1964) (holding public official may recover in state libel action only when

-10-

the alleged libelous statement is false and when statement is made with malice). The Board simply made a statement about Ms. Phelan's failure to follow an ethics policy that she voted for on at least three occasions. She remained free to express her views publicly and to criticize the ethics policy and the Board's censure. See Meese, 481 U.S. at 480-81 (noting that disseminators of material labeled as "propaganda" by Congress could "add any further information they think germane to the public's viewing of the materials"). In fact, Ms. Phelan has explicitly stated she would engage in the same actions under similar circumstances in the future.

Furthermore, the oath Ms. Phelan took after elected is a general public service oath, by which Board members pledge to uphold federal and state laws and to "faithfully, honestly, and impartially discharge the duties of Trustee."[3] An oath restricting an individual's free speech rights would of course be subject to heightened First Amendment scrutiny. See, e.g., Communist Party v. Whitcomb, 414 U.S. 441, 449-50 (1974) (holding unconstitutional a state loyalty oath requiring new political parties to swear not to advocate the forceful overthrow of

---

[3] The oath is entitled the "Laramie County Community College Oath of Office" and contains the following language: "I, Elizabeth Phelan, do solemnly swear that I will support the Constitution and Laws of the United States, the Constitution and Laws of the State of Wyoming, and that I will faithfully, honestly, and impartially discharge the duties of Trustee of the District Board of Trustees of Laramie County Community College to the best of my ability and understanding, so help me God."

government before being placed on the ballot); <u>Whitehill v. Elkins</u>, 389 U.S. 54, 62 (1967) (invalidating oath requiring teachers to swear under penalty of perjury that they are not attempting "one way or another" to overthrow the government by force).  But because the oath signed by Ms. Phelan does not contain a penalty, such as perjury, for failure to follow the ethics policy, it also does not restrict her free speech rights.

We therefore AFFIRM the district court's grant of Defendant's motion for summary judgment.