# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

——————

No. 19-20237

——————

DAVID BUREN WILSON,

      Plaintiff - Appellant

v.

HOUSTON COMMUNITY COLLEGE SYSTEM,

      Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**
July 15, 2020

Lyle W. Cayce
Clerk

——————————

Appeal from the United States
for the Southern District of Texas

——————————

## ON PETITION FOR REHEARING EN BANC

(Opinion April 7, 2020, 5 Cir., _____ , _____ F.3d _____ )

Before DAVIS, SMITH, and STEWART, Circuit Judges.

PER CURIAM:

( )   Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

( X )   Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. The court

having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED. In the en banc poll, eight judges voted in favor of rehearing (Chief Judge Owen, Judge Jones, Judge Elrod, Judge Higginson, Judge Willett, Judge Ho, Judge Duncan, and Judge Oldham), and eight voted against rehearing (Judge Smith, Judge Stewart, Judge Dennis, Judge Southwick, Judge Haynes, Judge Graves, Judge Costa, and Judge Engelhardt).

ENTERED FOR THE COURT:

 /s/ W. Eugene Davis_____
UNITED STATES CIRCUIT JUDGE

EDITH H. JONES, Circuit Judge, joined by WILLETT, HO, DUNCAN, and OLDHAM, Circuit Judges, dissenting from the denial of rehearing *en banc*.

Axiomatic to the First Amendment is the principle that government "may interject its own voice into public discourse." *Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1247 (10th Cir. 2000) (citing *Meese v. Keene*, 481 U.S. 465, 480–82, 107 S. Ct. 1862, 1870–72 (1987)).[1] According to the panel opinion, however, the "government," i.e. Houston Community College's Board, does not enjoy First Amendment protection to "speak" by issuing a censure against this gadfly legislator. In so holding, the panel opinion exacerbates a circuit split, threatens to destabilize legislative debate, and invites federal courts to adjudicate "free speech" claims for which there are no manageable legal standards. The First Amendment was never intended to curtail speech and debate within legislative bodies. I respectfully dissent from the denial of rehearing *en banc*.

The facts of this case are straightforward. David Wilson, then a trustee of the Board of Trustees for Houston Community College Systems ("HCC"), publicly alleged that fellow Board members were violating the Board's bylaws and not acting in HCC's best interests. He hired a private investigator to check on the alleged residency of one member, produced robocalls, and gave interviews voicing his criticisms. The Board responded by censuring him for acting in a manner "not consistent with the best interests of the College or the Board, and in violation of the Board Bylaws Code of Conduct." Wilson countered with a lawsuit against HCC, which alleged that the censure violated

---

[1] *See also Pleasant Grove City v. Summum*, 555 U.S. 460, 467, 129 S. Ct. 1125, 1131 (2009) ("A government entity has the right to speak for itself. [I]t is entitled to say what it wishes, and to select the views that it wants to express.") (alteration in original) (internal quotation marks and citations omitted); *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553, 125 S. Ct. 2055, 2058 (2005) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny.").

his free speech rights and injured his reputation.[2] HCC moved to dismiss for lack of jurisdiction and failure to state a claim, and the district court granted that motion. A panel of this court reversed, concluding that "a reprimand against an elected official for speech addressing a matter of public concern is an actionable First Amendment claim under § 1983." *Wilson v. Houston Cmty. Coll. Sys.*, 955 F.3d 490, 498 (5th Cir. 2020).

First, the panel's holding is out of step with four sister circuits, all of them in agreement that a legislature's public censure of one of its members, when unaccompanied by other personal penalties, is not actionable under the First Amendment.[3] Decisions from the Tenth and Sixth Circuits are particularly compelling. In *Phelan,* the Tenth Circuit held—on facts strikingly similar to the case at bar—that a college board's censure did not infringe a board member's free speech rights because it did not punish her for exercising those rights nor deter her future speech. 235 F.3d at 1247. As the court explained, "[t]he crucial question is whether, in speaking, the government is *compelling* others to espouse or to suppress certain ideas or beliefs." *Id.* (emphasis in original). "In order to compel the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is 'regulatory, proscriptive, or compulsory in nature.'" *Id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 11, 92 S. Ct.

---

[2] The Board took away certain of Wilson's perks of office but did not otherwise act against him or his personal property.

[3] *See, e.g.*, *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 181–83 (3d Cir. 2015); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543–46 (9th Cir. 2010); *Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1247 (10th Cir. 2000); *Zilich v. Longo*, 34 F.3d 359, 363–64 (6th Cir. 1994); *see also Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34 (1st Cir. 1996) (concluding there is "no First Amendment protection for a politician whose rights to freedom of speech, freedom of association, and freedom to disassociate [oneself] from unpopular views have been injured by other politicians seeking to undermine his credibility within his own party and with the electorate") (alteration in original) (internal quotation marks and citation omitted).

2318, 2324–25 (1972)).    Such action could include imprisonment, fines, injunctions, or taxes, but "[a] discouragement that is 'minimal' and 'wholly subjective'"—such as a censure resulting in reputational injury—"does not . . . impermissibly deter the exercise of free speech rights."  *Id.* at 1247–48 (quoting *United States v. Ramsey*, 431 U.S. 606, 624, 97 S. Ct. 1972, 1982 (1977)).  Fellow legislators may strike hard verbal blows, and all's fair when they exercise corporate authority to censure or reprimand one of their members;  such actions are not a *violation* of the First Amendment, but its *embodiment* in partisan politics.   As *Phelan* explained, hurt feelings or reputational injuries are "not enough to defeat constitutional interests in furthering 'uninhibited, robust' debate on public issues." *Phelan*, 235 F.3d at 1248 (quoting *New York Times v. Sullivan,* 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964)).  The panel opinion here failed to confront *Phelan* on its merits.

*Zilich v. Longo*, 34 F.3d 359 (6th Cir. 1994), is also exemplary.[4]  There, a former city councilman sued the council members who passed a resolution, after he left office, challenging whether he ever resided in his district and urging legal action for disgorgement of his official salary.  As in *Phelan*, the Sixth Circuit concluded that resolutions condemning or approving the conduct of elected officials "are simply the expression of political opinion."  *Id.* at 364. "They do not control the conduct of citizens or create public rights and duties like regular laws,"  *id.*,  and thus do not infringe on censured policymakers' free speech rights. *Zilich* reveals a very practical grasp of the squabbles that legislative politics involve:

> The First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering through the adoption of

---

[4] The panel opinion mistakenly suggests that *Zilich* is distinguishable because it involved a "resolution" against the dissenting member rather than a "censure."  *Wilson,* 955 F.3d at 499–50.  Query what difference this semantic distinction, even if accurate, would make?  But the panel neglects that the Board here actually passed a "resolution of censure"!

legislative resolutions. . . . This principle protects Zilich's right to oppose the mayor without retribution and it also protects defendants' right to oppose Zilich by acting on the residency issue which was left unresolved for over two years.

34 F.3d at 363. These cases' application of true First Amendment principles put the reasoning of our court's panel to shame.

Second, on its own terms, the *Wilson* panel misplaced its reliance on circuit precedent, principally cases concerning official reprimands against elected Texas judges. *See Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990); *Jenevein v. Willing*, 493 F.3d 551 (5th Cir. 2007). These decisions stand on insecure legal footing and are otherwise clearly distinguishable. *Scott* originated in the body of law that protects First Amendment rights of ordinary government employees and used to be characterized by the *Connick/Pickering* balancing test. Whether this analogy was ever appropriate to evaluate judicial impropriety is dubious, so much so that the *Jenevein* court essentially abandoned it in favor of a classic First Amendment strict scrutiny standard. But even if these decisions remain sound,[5] this court had and has sufficient familiarity with judicial ethics to determine the extent to which a judge's (constitutionally protected) statements on a matter of public concern comport with (the compelling governmental interest in) assuring the courts' integrity and impartiality. We have no adequate background to determine how, in the hurly-burly political world of a legislative body, either elemental First Amendment principles or background ethical standards apply to "balance" the

[5] Pursuant to *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006), the scope of First Amendment protection from discipline by governmental employers has been narrowed. *See Anderson v. Valdez¸* 845 F.3d 580, 592–93 (5th Cir. 2016) ("[W]hen public employees [speak] pursuant to their official duties, [they] are not speaking as citizens. . . . Such [j]ob-required speech is not protected, even when it irrefutably addresses a matter of public concern.") (second, third, fourth, and fifth alterations in original) (internal quotation marks and citation omitted). Application of such case law to elected judges has thus become even more tenuous.

public statements of one official against the retaliatory statements of his co-legislators in their capacity as "the government."

*Scott* and *Jenevein* are distinguishable for another reason. Judicial discipline is incommensurable with legislative debates. The body meting out discipline in the judicial cases was the Texas Commission on Judicial Conduct, which has authority to impose progressive discipline up to and including a recommendation to the state Supreme Court of the judge's removal from office. TEX. CONST. art. V, § 1-a. HCC's Board lacks authority to remove its own members, whose ultimate discipline resides in the ballot box. Further, judges, even elected judges, are not equivalent to legislators when it comes to participating in the public square. Judges must submit our extrajudicial "speech" to institutional discipline for the sake of public confidence in the impartiality of our judicial work. In contrast, the duty of legislators is precisely to "speak" on matters of public concern, either individually or in their capacity as the majority, without inhibition. Such "speech" includes addressing the (mis)conduct of the legislative body's own members. Indeed, "[v]oting on public policy matters coming before a legislative body is an exercise of expression long protected by the First Amendment." *Camacho v. Brandon*, 317 F.3d 153, 160 (2d Cir. 2003). As the Supreme Court observed in *Bond v. Floyd*, 385 U.S. 116, 135–36, 87 S. Ct. 339, 349 (1966), "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." Because the sanction of fellow Board members generally lies with the voters, policymakers—like HCC's Board of Trustees—must be able to "speak" by issuing official resolutions, censures, or reprimands. Otherwise, as in this case, the First Amendment becomes a weapon to stifle fully protected government speech at the hands of a fully protected speaker.

Our own case law actually respects the lack of a constitutional remedy for ordinary intra-legislative squabbling. In *Colson v. Grohman,* 174 F.3d 498 (5th Cir. 1999), this court denied First Amendment relief to a city councilwoman who asserted that the city and other public officials engaged in retaliatory criticism, false accusations, and investigations because of her political views and votes. *Id.* at 500. While acknowledging the *Scott* decision's framework for actionable First Amendment conduct against an "elected public official," this court nevertheless found the hardball tactics employed against the plaintiff insufficient to withstand summary judgment. This court concluded that "the defendants' allegedly retaliatory crusade amounted to no more than the sort of steady stream of false accusations and vehement criticism that any politician must expect to endure." *Id.* at 514. *Colson* stands as a practical rebuke to this *Wilson* panel's insistence on judicializing legislative disputes.

Finally, although it makes no attempt to explain what happens next, the panel opinion also raises serious questions about how to apply strict scrutiny in a novel context and an already muddled area of the law. What judicially manageable tests are there for deciding when a body's censure of one of its members' speech violates a "compelling interest" and isn't "narrowly tailored"? *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2327 (2016) (Thomas, J., dissenting) ("If our recent cases illustrate anything, it is how easily the Court tinkers with levels of scrutiny to achieve its desired result."). The panel leaves that question for an uninstructed district court on remand. But I am skeptical that any cogent judicial response is possible.

Given the increasing discord in society and governmental bodies, the attempts of each side in these disputes to get a leg up on the other, and the ready availability of weapons of mass communication with which each side can tar the other, the panel's decision is the harbinger of future lawsuits. It

weaponizes any gadfly in a legislative body and inflicts an immediate pocketbook injury on the censuring institution. Political infighting of this sort should not be dignified with a false veneer of constitutional protection and has no place in the federal courts.

I respectfully dissent.

JAMES C. HO, Circuit Judge, dissenting from denial of rehearing en banc:

Holding office in America is not for the faint of heart. With leadership comes criticism—whether from citizens of public spirit or personal malice, colleagues with conflicting visions or competing ambitions, or all of the above.

Those who seek office should not just expect criticism, but embrace it. Tough scrutiny is not a bug, but a defining feature of our constitutional structure. In America, we trust our citizens to determine for themselves what is right—and to count on vigorous, unrelenting debate to guide them. As Benjamin Franklin once wrote, "a free constitution and freedom of speech have such a reciprocal dependence on each other that they cannot subsist without consisting together." Benjamin Franklin, *On Freedom of Speech and the Press*, *in* 2 THE WORKS OF BENJAMIN FRANKLIN 310 (Sparks ed., 1882).

Of course, no one *enjoys* being booed.[1] But as de Tocqueville observed nearly two centuries ago, "[t]he social state naturally disposes Americans not to be easily offended in little things," and "the democratic freedom they enjoy makes this indulgence pass into the national mores." 2 ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 541 (Mansfield ed., 2000) (1840).

And because our citizens don't fear criticism, it is only natural to insist that officials don't either. We expect officials in every branch of government to rise to the challenge—not wilt under the pressure. Churchill once wrote: "Courage is rightly esteemed the first of human qualities, because, as has been said, 'it is the quality which guarantees all others.'" WINSTON CHURCHILL, GREAT CONTEMPORARIES 211 (Muller ed., 2012) (1937). Translation: Leaders lead. They listen to reason. But they won't be cowed by the mob.

---

[1] Studies show, for example, that in sports, fear of being booed causes "referee bias" toward the home team: "[F]aced with enormous pressure—say, making a crucial call with a rabid crowd yelling, taunting, and chanting a few feet away—it is natural to want to alleviate that pressure." TOBIAS J. MOSKOWITZ & L. JON WERTHEIM, SCORECASTING: THE HIDDEN INFLUENCES BEHIND HOW SPORTS ARE PLAYED AND GAMES ARE WON 159, 165 (2011).

No one would confuse the typical public officeholder today for Churchill. But whatever fortitude an official may happen to possess, we know this to be true: The First Amendment guarantees freedom *of* speech, not freedom *from* speech. It secures the right to criticize, not the right *not* to be criticized.

The panel here took a different view, holding that public officials have a right not to be censured for engaging in speech critical of others.[2] Our court has previously found such rights for judges. *See Scott v. Flowers*, 910 F.2d 201, 209 (5th Cir. 1990); *but see id.* at 215–16 (Garwood, J., dissenting); *see also Jenevein v. Willing*, 493 F.3d 551, 562 (5th Cir. 2007). So the panel understandably applied those precedents to officials outside the judiciary.

But our sister circuits have found no such right. *See, e.g.*, *Phelan v. Laramie Cty. Cmty. Coll. Bd.*, 235 F.3d 1243, 1248 (10th Cir. 2000) ("[C]ensure is clearly not a penalty that infringes Ms. Phelan's free speech rights.") (citing *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994)). As then-Judge Scalia once wrote, "[w]e know of no case in which the [F]irst [A]mendment has been held to be implicated by governmental action consisting of no more than governmental criticism of the speech's content." *Block v. Meese*, 793 F.2d 1303, 1313 (D.C. Cir. 1986). After all, the First Amendment does not "consider[] speakers to be so timid, or important ideas to be so fragile, that they are overwhelmed by knowledge of governmental disagreement." *Id.*

Leaders don't fear being booed. And they certainly don't sue when they are. I join Judge Jones's excellent opinion dissenting from the denial of rehearing en banc.

---

[2] Plaintiff also complained about certain "additional measures," beyond the words of censure, that have been taken against him. But the panel allowed him to proceed based on words alone. *See Wilson v. Houston Cmty. Coll. Sys.*, 955 F.3d 490, 499 n.55 (5th Cir. 2020).